The Chancellor delivered his decrees and after stat- ,, . , . , mg the case as above, he said,
I have considered the circumstances of the case, (as v far as the imperfect lights and proofs furnished, enabled me) the points made, and the agreements of counsel, very maturely. The complainant’s counsel insisted that the award made by arbitrators, upon whose conduct there was no imputation, was final and conclusive. The defendant’s counsel insisted, that this was not a voluntary submission to arbitration, but imposed on him by the court; and that, therefore, the award ought not to be considered binding $ unless upon a full examination of all the facts of the case, and a plenary hearing, the Court should be entirely satisfied therewith.
. I confess I do not see the force of this argument.. A report was made by the master, stating that in all events, the defendant was indebted to complainant, to the amount of $ 13,000, as.his own accounts admitted that sum. And the Coux*t ordered the payment of that sum. But upon the argument of defendant’s counsel, the Court was induced to give the defendant an alternative, to pay the money according to that order, or to refer the whole case to arbitration. This was for the defendant’s benefit, and he made his option ; and I consider him as much bound by the award, as if he had himself originally solicited the reference. Of what utility was the appointment of arbitrators, if the Court is to go into the whole case and into the examination of all the accounts ? It would have been a mere waste of time, and a source of delay to the complainant. I am of opinion therefore, that the award is binding on the defendant, unless he can shew corruption, partiality or gross misconduct on the part of the arbitrators ; or unless the arbitrators were mistaken in a plain point of law, which affected the interests of the or unless *306 *kere were such gross and palpable mistakes in calcula-tion as produced manifest injustice.
With respect to the first of these grounds of objection, ho'pretence has been set up, nor any allegation made of corruption, partiality or misconduct on the part of the arbitrators.
With respect'to .the second ground, it was argued, that there were plain mistakes in point of law '$ which it was insisted,1 furnished good ground to set ¿side the : award: viz, (that the-arbitrators had refused'to allow the defendant his .charges of commissions, for covering the property óf the complainant who is a British subject, and passing it as American, upon theground that the agreement between the complainant and defendant, had stipulated all the charges which were to be made for all the services to'be performed ; and that they, the arbitrators were bound by the. agreement, and could not travel out of it, or allow any other or greater charges or commissions than were comprised in the agreement $ which the defendant’s counsel insisted was an error in law of the arbitrators.
Secondly. That the arbitrators bad refused to allow the defendant the said covering commissions, on a mistaken ground that they were not legal charges.
It might perhaps be sufficient to say, that I have no data upon which to form an opinion on what principles the arbitrators proceeded in rejecting these charges for covering commissions. It does not appear that the arbitrators refused to allow them upon either of the grounds alleged. For any thing that appears to the contrary, they may have rejected these charges upon a full consideration of all the circumstances apart from the agreement, and from a conviction that the defendant was not entitled under these circumstances to those commissions. And upon that ground I should be of opinion that the award ought tobe conclusive Upon the parties $ but admit that it did appear that the arbitrators had decided on one or other of the alleged grounds. I cannot set aside the award : .for I am not prepared to say *307 that their construction of the agreement may not be the right one; or to presume with the defendant that there was an omission in the agreement, of any charges intended to be allowed for any services to be performed.
If, however, every other difficulty was overcome* there remains one which with me is invincible. I can^ not sanction the covering British property as American*. It was contended for the defendant that however irregular such transactions might be, however done in frau-dem legis, (and the very terms of the claim imply this) yet that usage had sanctioned the claim ; and that the usage made it obligatory on* the arbitrators to allow the covering commission. That their refusal to do so, was a violation of the mercantile usage now grown into law* which ought to induce the' Court to set aside the award. I will not trust my feelings in the expression of invectives against this, usage ; I will only remark that so far fronl bad usages ripening into law, it is a maxim of justice as well as of law, that mains usus abolendus est. That the usage in question is* mains- in a high degree, is obvious- frora-its! necessarily involving the parties concerned in it, in deception, fraud;, corruption and sometimes perjury ; and all this to compass a violaron of as law of the country. How an usage productive of such, effects, and directly in contravention of the laws of the country, can. ever acquire a legitimate character and be entitled- to claim the support of courts of justice' is incomprehensible. The parties engaged in such transactions may give effect to- such a principle; they may make such a law for themselves-, and Be obedient to it; and instances may pass sub silentio in courts of justice^, hut if the objection be taken, and brought to the vitew of the court, it must prevail. The law will not he made-instrumental to destroy the law* In.íhe case of Hannay vs. Eve, 3d Cranch, 247, (quoted by Mr. Drayton);. Chief J ustice Marshal declares the opinion of the Gourt to be that though the agreement was riot in-itself an immoral-act, yet as it was a fraud on tile act of congress, no principle can be more clear than this, that the courts of the. *308 United States can furnish no aid in giving efficacy to it.
It was further argued on the part of the defendant, that an award ought to be final and settle all the points *n contPoversy between the parties, and referred to the arbitrators ;■ or it should be set aside ; and it was alleged that the award in this case did not decide finally on a sum of g 888 88, which was the amount of a note of hand due to defendant, and left with complainant for collection. This objection, I apprehend, is founded in mistake. The award does decide that the defendant is not entitled to make the complainant accountable for this money. If they had stopped there, no controversy could have arisen 5 but from tenderness for the defendant and for his benefit, they go on to say, in a memorandum at the foot of the account, that they do not mean to confound this claim with the items totally and finally rejected; but that the . note of hand left by defendant with complainant for collection, should he returned, or the money accounted for. This was speaking the language of the law itself; and was meant to furnish evidence to defendant, that though'the claim was rejected in this settlement, he was entitled to the note its elf. I hare no doubt, that the award is sufficiently complete ahd final to he sustained. But if a regard to the interests of the defendant on this point had betrayed the arbitrators into any little irregularity, not affecting the justice of the case, I should not, on that account set aside their award.
It is therefore ordered and decreed, That the award made and returned in this cause, be confirmed, and declared absolute and final; and that the defendant do pay to the complainant the sum of g 22,397 77, which was awarded by the arbitrators.
From this decree there was an appeal.
An appeal is made from this decree on the following grounds:
1. That the written agreement between the complainant and defendant, did not, and was not intended to effect the claim for covering commissions, which was a *309 subject collateral to and independent of the agreement 5 depending on the known usage of the particular trade $ and as the rejection of the claim by the referrees proceeded from a misapprehension of the legal effect of . , , . ,. ,, ,, . . that instrument, this error was subject to the revision and correction of the Court.
2. That if the contract for covering the property was a fraud on our laws, that circumstance would not bar the claim of the defendant, but rather would be an objection to the complainant recovering any thing from the defendant, as the complainant was a party to and a chief actor in the fraud ; and the rule of law on this subject, is, Potior est conditio defendentis, the effect whereof would be to prevent the Court from making any decree against the defendant.
3. That the award is defective and wrong in not exempting the defendant from the consequences of any of the debts, which are the proceeds of the vessel and cargo, proving insolvent.
4. That the decree is in other respects contrary to equity. Signed, K. L, Simons, sol. for apppell’t.
The case was argued before the Court of Appeals i Present Chancellors Desaussure, GaiUard and Waties.
The decree was unanimously affirmed for the reasons stated therein.
The ground on which the complainant Aylwin was understood to have employed Captain Perkins as his agent, to cover the vessel and, cargo, as American, was that the British Parliament had passed an act pro. hibiting British subjects from supplying foreign ports or places with slaves. Whereas the act of Congress totally prohibiting the slave trade was not to takeeffect till the 1st. of January, 1808. The vessel and cai-go arrived in America in October 1807. The use therefore of the Ame. rican name, on the voyage, was not to cover the property from the operation of the American laws, but of the British act of Parliament. The importation of slaves into this country was not then therefore such an unlawful act, by the American laws, as could be made a ground to resist the demand of the complainant for an account, on the maxim, that where both parties are in default, potior est conditio defendentis. Nor was it seriously insisted upon by the defendant, that he ought not to account to complainant. But the covering British property with the American name did appear to the Court, tobe such an offence, as to deprive the American citizen of any right to claim the aid of the Court in recovering commissions for such an unlawful act.